IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JEANETTE JACOBS,

                              Plaintiff,              OPINION AND ORDER

   v.

                                                             07-cv-681-jcs

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                             Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Because Judge Shabaz will be convalescing from shoulder surgery for an extended period, I have assumed administration of the cases previously assigned to him, including this one.

This is an action for judicial review of an adverse decision of the Commissioner of Social Security brought pursuant to 42 U.S.C. § 405(g). Plaintiff Jeanette Jacobs seeks reversal of the commissioner's decision that she is not disabled and therefore ineligible for Disability Insurance Benefits and Supplemental Security Income under Title II and Title XVI of the Social Security Act, codified at 42 U.S.C. §§ 416(i), 423(d) and 1382(c)(3)(A). Plaintiff contends that the decision of the administrative law judge who denied her claim is not supported by substantial evidence because he did not properly consider her borderline

1

intelligence, did not give proper weight to the opinion of her treating physician, improperly assessed her credibility and erred in determining her residual functional capacity.

I find that there is substantial evidence to support the administrative law judge's conclusion that plaintiff's mental impairment did not impose a significant limitation on her ability to perform work activities and that she was able to perform unskilled work.  I also find that the administrative law judge gave good reasons for rejecting the opinion of plaintiff's treating physician that she could not work and that there is substantial evidence in the record to support his decision.  Further, I find that the administrative law judge properly determined plaintiff's credibility and residual functional capacity.

For these reasons, I am denying plaintiff's motion for summary judgment and affirming the administrative law judge's decision.

The following facts are drawn from the administrative record (AR):

## FACTS

### A.  Background and Procedural History

Plaintiff was born on June 14, 1953.  AR 22.  She has a ninth grade education and past work experience as an office cleaner and as a laborer for a bindery.  AR 90, 95.  Plaintiff reported that she had stopped working in September 2000 because of back pain.  AR 90.

Before then, she had filed an application for disability insurance benefits and supplemental security income that was denied by an administrative law judge on November 17, 2003.  Because plaintiff did not appeal this decision, the decision stands as the final determination as to the issue of plaintiff's disability through November 17, 2003. AR 16.

Plaintiff filed new applications for disability insurance benefits and supplemental security income on March 24, 2004 and March 5, 2004, respectively, alleging that she had been unable to work since September 7, 2000 because of arthritis in her knees, diabetes, chronic low back pain and degenerative disc disease. AR 53.

After the local disability agency denied her application initially and upon reconsideration, plaintiff requested a hearing, which was held on July 17, 2006 before Administrative Law Judge Roger W. Thomas in Duluth, Minnesota.  The administrative law judge heard testimony from plaintiff, who was represented by a lawyer.  AR 762-87.  He also heard testimony from a neutral vocational expert.  AR 788-801.  On September 26, 2006, the administrative law judge issued his decision, finding plaintiff not disabled.  AR 16-24. This decision became the final decision of the commissioner on October 16, 2007, when the Appeals Council denied plaintiff's request for review.  AR 8-10.

B. <u>Medical Evidence</u>

On January 10, 2002, plaintiff had spinal fusion surgery.  AR 290.  By July 3, 2002, her back symptoms had improved.  She no longer had significant back or leg pain and was walking well.  AR 404.

In March 2003, plaintiff experienced chest pain and sought medical treatment.  Her electrocardiogram was within normal limits.  She was diagnosed with atypical chest pain with multiple risk factors for coronary heart disease.  She was advised to cut down or eliminate alcohol intake and to quit smoking.  AR 411.  On March 19, 2003, plaintiff had a left heart catherization and was diagnosed with nonobstructive coronary heart disease.  AR 414.

In December 2003, plaintiff saw Dr. Ferrer and complained of persistent low back pain. AR 638-39.  Dr. Ferrer noted no significant abnormalities when he examined plaintiff. AR 639.

Between January 2004 and April 2005, plaintiff saw her primary care physician, Dr. Paul Strapon, on a regular basis.  He  prescribed medication for plaintiff's complaints of back and knee pain, muscle spasms in her back, diabetes and asthma.  AR 541-58.  On May 2, 2004, plaintiff sought treatment from Dr. Strapon for a foot infection and reported she did a lot of walking.  AR 632.

On June 22, 2004, plaintiff saw orthopedist Patrick M. Healy for right knee pain. She reported that the pain had started in March 2004 and was aggravated by standing.  Dr.

4

Healy noted that the pain was initially in her left knee but "the pain kind of switched to her right knee." He stated that her physical exam was pretty unrevealing other than detecting diffuse joint line tenderness. Plaintiff's bone scan was normal with some subtle findings of early degenerative disease of the knee. Dr. Healy diagnosed plaintiff with early medial compartment disease. He did not recommend surgery but suggested that plaintiff take an oral anti-inflammatory medication with a possible injection if her symptoms persisted. AR 733. Plaintiff reported that she was taking Darvocet, Flexeril, Advania, Lipitor, aspirin, Accupril, Metformin and Glucotrol. AR 735.

On June 30, 2004, plaintiff reported to Dr. Strapon that she had undergone psychological testing and was told she could no longer work. AR 627. In July 2004, Dr. Strapon prescribed a muscle relaxant because plaintiff complained of neck and shoulder pain after using her arms too much. She reported that she was taking Darvocet but it did not help. AR 626. That same month plaintiff saw Dr. Strapon, complaining of wrist pain. Dr. Strapon noted that there was minimal swelling of plaintiff's wrist but no significant swelling and a full range of motion. Dr. Strapon gave her a wrist brace and advised her to pursue physical therapy. AR 623-24.

On August 17, 2004, Dr. Craig W. Florine, an ophthalmologist, examined plaintiff's eyes. He diagnosed her as having chronic open angle glaucoma suspect, mild background diabetic retinopathy and early cataracts and recommended a follow-up appointment in six

5

months.  AR 483.  On August 30, 2004, Dr. Strapon began prescribing insulin for plaintiff's diabetes.  AR 621.

In February 2005, plaintiff saw Dr. Strapon with complaint of bilateral knee pain. Dr. Strapon diagnosed her as having degenerative arthritis in both knees and prescribed medication.  AR 616.

In April 2005, nerve conduction studies revealed that plaintiff had moderately severe bilateral carpal tunnel syndrome and mild peripheral neuropathy.  AR 538-39.  Dr. Healy performed carpal tunnel release surgery on plaintiff's wrists on May 4, 2005 and June 15, 2005.  AR 720-21, 724-25.

On July 14, 2006, Dr. Strapon completed a Residual Functional Capacity Questionnaire for plaintiff.  He listed her diagnoses as persistent chronic low back pain, status post lumbar disc fusion, degenerative joint disease in knees, hip arthritis, diabetes and corrected bilateral carpal tunnel, but he did not identify any supporting clinical findings or laboratory or test results on the form.  He identified plaintiff's symptoms as shortness of breath, fatigue and weakness.  AR 743.  He checked boxes on the form indicating that plaintiff could sit for less than two hours (with a sit or stand option), stand or walk less than two hours and lift less than 10 pounds occasionally.  Strapon also stated that plaintiff would need to take an undetermined number of unscheduled breaks of 20 to 30 minutes during the work day.  He noted that it was extremely difficult and painful for plaintiff to bend and twist

since her 2002 back surgery.  AR 744.  He also noted that plaintiff used an inhaler for persistent shortness of breath and cough because of her chronic obstructive pulmonary disease and recommended that she avoid exposure to extreme cold, wetness, fumes, odor, dusts and gases and have only moderate exposure to extreme heat and high humidity.  AR 746.

## C.  Consulting Physicians

On June 28, 2004, psychologist Dr. Marcus Desmonde performed a consultative examination of plaintiff for the state disability agency.  He administered the WAIS-III test, which indicated that plaintiff had a verbal IQ of 76, performance IQ of 76 and a full scale IQ of 74.  Dr. Desmonde diagnosed plaintiff with alcohol abuse, continuous; adjustment disorder with depressed mood; and borderline intellectual functioning.  Plaintiff reported to Dr. Desmonde that she drank between 12 and 18 beers, two or three times a week.  She also reported that she walked for exercise.  AR 486.  Dr. Desmonde found that plaintiff was capable of understanding simple instructions and would be able to carry out tasks within any limitations set by her treating physician.  He also noted that she would work best in an environment where she had limited contact with co-workers, supervisors and the general public.  AR 488.  He concluded:

> She may have difficulty tolerating the stress and pressure of full
> time, competitive employment.  Her chances for employability

> would be greatly enhanced if she were able to complete an
> AODA program and maintain sobriety and perhaps involvement
> with a pain clinic.

AR 488.

On August 2, 2004, plaintiff was evaluated by Dr. Eric Carlson at the request of the state agency. He listed her diagnoses as diabetes, hypertension, chronic low back pain with no radiculopathy and knee pain. AR 495. Plaintiff reported that she needed no help to get dressed, bathe or use the toilet and did not use an assistive device for walking. She also reported that she did simple chores including washing dishes, sweeping the floor and going shopping. Dr. Carlson observed plaintiff sitting for 15 minutes without demonstrating any pain behaviors. He also observed that she climbed on the examination table independently. AR 496. Plaintiff's gait was normal, she was able to toe and heel walk and her range of motion was full. He concluded plaintiff "would have a challenging time during occupations that require any significant amount of lifting, carrying or more than light work." AR 497.

On August 20, 2004, state agency consulting physician Dr. Pat Chan assessed plaintiff's physical residual functional capacity, noting that plaintiff had been diagnosed with status post lumbar fusion and knee pain. He concluded that plaintiff could lift 10 pounds frequently and 20 pounds occasionally; stand or walk six hours in an eight-hour work day; and sit six hours in an eight-hour work day with no limitations on pushing and pulling. Dr. Chan noted that plaintiff had back pain but no abnormal neurological examination and knee

8

pain but full strength and normal gait.  AR 502-509.  On November 24, 2004, a second state agency consulting physician affirmed this assessment.  AR 509.

On August 20, 2004, state agency consulting psychologist Roger Rattan completed a Psychiatric Review Technique Form for plaintiff after reviewing the evidence of record, including Dr. Desmonde's report.  He evaluated the evidence under the listing categories for affective disorder, mental retardation and substance addiction disorder.  In addressing the "B" criteria for these listings, he found plaintiff had mild restrictions of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation.  Rattan concluded that the evidence did not establish the presence of the "C" criteria.  AR 514-25.

Rattan also completed a mental residual functional capacity assessment for plaintiff. He found that she was moderately limited in her ability to understand, remember and carry out detailed instructions and to complete a normal work day and work week at a consistent pace.  AR 511.  Rattan concluded that plaintiff would be able to perform sustained unskilled work under normal supervision even though she had been diagnosed with borderline IQ, adjustment disorder and alcohol abuse.  AR 512.  In November 2004, consulting psychologist Jack Spear affirmed Rattan's assessment.  AR 512.

### D.  Hearing Testimony

Plaintiff testified that she lived alone and received general assistance.  AR 768-69. She had finished the ninth grade and could read and write but did not have a driver's license. AR 769.  She had recently stopped drinking alcohol but still smoked cigarettes.  AR 770-71.

Plaintiff testified that she could not walk more than one block because she had arthritis in her hips.  AR 771.  She testified that she used a walker and wheelchair when her back or knees went out and that she had last used these devices in December 2005.  AR 773. She also testified that she has pain in her hands, knees and back.  AR 774-75.  She testified that the 2002 surgery on her back did not help her pain.  AR 774.

Plaintiff also testified that she took insulin for diabetes and that her blood sugars are high.  AR 776.  She testified that she used an inhaler two or three times a day.  AR 777-78.

Plaintiff testified that she was able to bathe and dress herself except when she was in severe pain twice a week.  AR 778.  She said that she had to go to the emergency room in December 2005 because of her back pain and that she had been prescribed nitroglycerin for chest pain.  AR 779-80.  She also testified that the medications she takes for her back pain make her drowsy.  AR 782.  Plaintiff said that she could sit for only 10 to 15 minutes at a time.  AR 784.

The administrative law judge called Edward Utities to testify as a neutral vocational expert.  AR 788.  The administrative law judge asked whether plaintiff's past work could be

10

performed by an individual of plaintiff's age, education and work experience who was limited to light work with occasional bending or twisting of the trunk, no repetitive power gripping bilaterally, no kneeling and no exposure to extreme cold or humidity, fumes, odors, dust or gases.  Utities testified that such an individual could not perform plaintiff's past work but could perform 5,000 light, unskilled assembly jobs.  AR 792-93.  The administrative law judge asked the expert another hypothetical question limiting this person to simple, unskilled, low quota work.  The expert testified that the individual could perform the same 5,000 assembly jobs.  AR 795-96.

The administrative law judge then asked Utities to assume that the individual would have to take an undetermined number of unscheduled 20-30 minute breaks and could lift less than 10 pounds occasionally.  AR 749.  Utities stated that such an individual could not perform the light unskilled assembly jobs.  AR 795.  The administrative law judge asked Utities whether his testimony was consistent with <u>The Dictionary of Occupational Titles</u> and he responded "Yes."  AR 796.

### E.  <u>The Administrative Law Judge's Decision</u>

In reaching his conclusion that plaintiff was not disabled, the administrative law judge performed the required five-step sequential analysis.  <u>See</u> 20 C.F.R. § 404.1520.  At step one, he found that plaintiff had not engaged in substantial gainful activity since 2000.  At step

two, he found that a plaintiff had severe impairments of carpal tunnel syndrome, status post bilateral releases in 2005; type II diabetes mellitus with mild peripheral neuropathy: degenerative arthritis of the knees; degenerative disc disease of the lumbar spine, status post L4 to S1 decompressive laminectomy, nerve root foraminotomy and fusion and placement of instrumentation in 2002; asthma by report; non-obstructive coronary artery disease; and trochanteric bursitis and arthritis. AR 18-19.

The administrative law judge found insufficient evidence to support a conclusion that plaintiff had a severe mental impairment. He discussed the June 2004 consultative examination by Dr. Marcus Desmonde, noting that Dr. Desmonde had diagnosed plaintiff with alcohol abuse, adjustment disorder with depressed mood and borderline intellectual functioning. The administrative law judge found that plaintiff's daily activities, education, ability to read and write, ability to manage her own finances and work history showed that she was not significantly limited in spite of being found to be of borderline intelligence. The administrative law judge explained that plaintiff is "independently capable of a wide range of household chores, maintaining relationships and concentrating on and persisting in work as evidenced by her work history." He did not place controlling weight on Dr. Desmonde's opinion that plaintiff might have problems handling the stress and pressure of full-time employment because it was "highly dependent on the claimant's sobriety, which she has since achieved, and chronic pain, which is beyond his area of expertise." AR 19.

The administrative law judge found at step three that plaintiff did not have a physical impairment or combination of impairments that met or medically equaled any impairment listed in 20 C.F.R. 404, Subpart P, Appendix 1.  AR 20.  He stated as follows:

> The undersigned has reviewed the entire record and finds insufficient evidence to support the severity of a listed impairment.  The claimant has received positive results following back and carpal tunnel surgeries.  While her diabetes is under questionable control, she has no severe complications related to diabetes.  The claimant lacks the requisite neurologic loss and loss of ambulation to meet the severity of a listed impairment on her hip and knees.

AR 20.

At step four, the administrative law judge determined that plaintiff had the residual functional capacity to perform work requiring lifting 20 pounds occasionally and ten pounds frequently, standing or walking six hours in an eight-hour day, sitting two hours in an eight-hour day, occasional bending and twisting of the trunk with no repetitive power gripping or kneeling and no exposure to extremes of cold, humidity, fumes, odors, dusts and gases. AR 20.  He found that plaintiff's allegations of disabling pain and incapacitating limitations were not consistent with or supported by the objective medical record of treating and examining physicians.  He found that plaintiff's assertion that she had not obtained relief from pain after her back surgery was contradicted by the medical evidence in the record which showed

13

that she had significant improvement in her back and leg pain after the surgery; Dr. Carlson had noted after his 2004 consultative examination of plaintiff that plaintiff had some limitation of lumbar motion but full strength and good sensation in the lower extremities; and the record contained no evidence that plaintiff had any ongoing problems following her carpal tunnel surgeries.  He also indicated that plaintiff required only conservative treatment for her knees, which was inconsistent with significant problems.  The administrative law judge found that plaintiff's daily activities were inconsistent with her testimony because they included a wide range of household chores.

The administrative law judge considered all the medical opinions but did not place great weight on the opinion of Dr. Strapon, plaintiff's treating physician, because his check-off form opinion was "not consistent with his treatment notes which are inherently more reliable as they were produced in the course of treatment for the purpose of treatment."  He also stated that Dr. Strapon's treatment notes lacked the severe findings that would support his opinion. AR 22.  Finally, the administrative law judge stated that he had placed appropriate consideration on the non-examining opinions of the state examiners "as a reasonable analysis of the record at the time" but found that the weight of the current record supported his residual functional capacity determination.  AR 22.

At step five, the administrative law judge found that plaintiff was not able to perform her past work but could perform a significant number of other jobs in the economy, namely

14

bench work assembly positions (5,000 jobs). In reaching this conclusion, the judge relied on the testimony of the vocational expert, finding it to be consistent with the <u>Dictionary of Occupational Titles</u>.  AR 19.


OPINION

A.  <u>Standard of Review</u>

The standard by which a federal court reviews a final decision by the commissioner is well settled: the commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971).  When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, reweigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge regarding what the outcome should be.  <u>Clifford v. Apfel</u>, 227 F.3d 863, 869 (7th Cir. 2000).  Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the commissioner.  <u>Edwards v. Sullivan</u>, 985 F.2d 334, 336 (7th Cir. 1993).  Nevertheless, the court must conduct a "critical review of the evidence" before affirming the commissioner's decision, <u>id.</u>, and the decision cannot stand if it lacks evidentiary support or

15

"is so poorly articulated as to prevent meaningful review." <u>Steele v. Barnhart</u>, 290 F.3d 936, 940 (7th Cir. 2002).  When the administrative law judge denies benefits, he must build a logical and accurate bridge from the evidence to his conclusion.  <u>Zurawski v. Halter</u>, 245 F.3d 881, 887 (7th Cir. 2001).

## B. <u>Mental Impairment</u>

Plaintiff contends that the administrative law judge erred in his evaluation of the evidence concerning her mental limitations.  She focuses on the results of the WAIS-III test administered by Dr. Desmonde, which showed that plaintiff's score was 74, indicating that her intellectual functioning is borderline.  First, she argues that the administrative law judge erred by dismissing the test scores as an alcohol-related issue.  Plaintiff seems to suggest that the administrative law judge was playing doctor by finding that plaintiff's intellectual functioning was affected by alcohol.  I disagree.  Dr. Desmonde's report indicates that he found that plaintiff had borderline intelligence functioning, but concluded that plaintiff's limitations on her ability to work were affected by her drinking and chronic pain.  Dr. Desmonde stated that "[Plaintiff's] chances for employability would be greatly enhanced if she were able to complete an AODA program and maintain sobriety and perhaps involvement with a pain clinic."  In light of this statement, the administrative law judge

16

reasonably found that the *work limitations* endorsed by Dr. Desmonde were related to plaintiff's alcohol use and chronic pain and not her borderline intelligence.

Contrary to plaintiff's argument, the administrative law judge did not find that plaintiff's IQ scores were related to her lack of sobriety. He accepted that the scores were consistent with borderline intelligence. What he did not accept was the conclusion that plaintiff's borderline intelligence imposed any significant limitation on her ability to function. In this regard, he noted that plaintiff was able to read, write and manage her finances and had had a successful work history. In addition, the state agency consulting psychologists concluded that plaintiff would be able to perform sustained unskilled work under normal supervision. This evidence is sufficient to support the administrative law judge's conclusion that plaintiff's borderline intelligence was not a "severe" impairment. 20 C.F.R. § 404.1521(a) (to be severe, impairment must significantly limit individual's physical or mental ability to do basic work activities). The only evidence plaintiff cites is her test scores, but those scores alone do not refute the administrative law judge's conclusion that plaintiff is able to perform the basic mental activities of unskilled work, which require the ability to understand, remember and carry out simple instructions, make simple work-related decisions, respond appropriately to supervision, coworkers and usual work situations and deal with changes in a routine work setting. Id.; Soc. Sec. Ruling 96-9p. See also Maggard v. Apfel, 16 F.3d 376, 380 (7th Cir. 1999) (administrative law judge properly found that

17

claimant's low IQ scores did not demonstrate mental retardation where evidence showed that claimant was able to relate to fellow workers and supervisors, understand and follow instructions, maintain attention required to perform simple, repetitive tasks and withstand stress and pleasures associated with daily work).  Indeed, the commissioner's listing for mental retardation, 12.05, makes clear that a person with an IQ above 70 is *not* presumptively disabled.  20 C.F.R., Pt. 404, Subpt. P, App. 1, Listing 12.05.

Plaintiff argues that even if her borderline intelligence was not disabling in itself, the administrative law judge was obligated to consider whether, in combination with her other impairments, it was equal in severity to the listing for mental retardation, or at the least, to include it in his hypothetical question to the vocational expert.  For a claimant to be found disabled on the basis of medical equivalence, the record must contain findings related to the impairments that are "at least of equal medical significance" to those of a listed impairment. 20 C.F.R. § 404.1526(b)(3).  Plaintiff points out that according to the commissioner's Program Operations Manual System, IQ scores in the range of 70 to 75 "in the presence of other physical or mental disorders that impose additional and significant work related limitation of function" may support a determination that an individual has an impairment that equals the listed impairment.  POMS DI 24515.056(D)(1).  As plaintiff agrees, the Program Operations Manual System is an internal manual for use by the agency and is not binding.  <u>Greenspan v. Shalala</u>, 38 F.3d 232, 239 (5th Cir. 1994)(POMS is not binding law);

18

Parker v. Lamon v. Sullivan, 891 F.2d 185, 190 (7th Cir. 1989) (Hearings Appeals and Litigation Law Manual is not binding on the agency and has no legal force).  In any case, the language of the rule cited by plaintiff implies that for a finding of medical equivalence to be made, the claimant must show that her low IQ scores impose a "significant work related limitation of function."  As just explained, substantial evidence supports the administrative law judge's conclusion that plaintiff did not make this showing.

Finally, the administrative law judge accounted for plaintiff's limited intellectual abilities when he asked the vocational expert to assume that the plaintiff had only a limited education.  20 C.F.R. § 404.1565(b)(3) (limited education means "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs).  Plaintiff suggests that her borderline intelligence would prevent her from performing the math and reading requirements of the unskilled assembly jobs identified by the vocational expert, but she makes no attempt to show what those requirements are, much less that she lacks the actual ability to meet them.  Accordingly, remand is not warranted by the administrative law judge's failure to include borderline intelligence as one of the impairments in his hypothetical question of the vocational expert.

19

## C. Opinion of Treating Physician

Although an administrative law judge must consider all medical opinions of record, he is not bound by those opinions.  Haynes v. Barnhart, 416 F.3d 621, 630 (7th Cir. 2005). "[T]he weight properly to be given to testimony or other evidence of a treating physician depends on circumstances."  Hofslien v. Barnhart, 439 F.3d 375, 377 (7th Cir. 2006). When a treating physician's opinion is well supported and no evidence exists to contradict it, the administrative law judge has no basis on which to refuse to accept the opinion.  Id.; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When, however, the record contains well-supported contradictory evidence, the treating physician's opinion "is just one more piece of evidence for the administrative law judge to weigh," taking into consideration the various factors listed in the regulation.  Id.  These factors include how often the treating physician has examined the claimant, whether the physician is a specialist in the condition claimed to be disabling, how consistent the physician's opinion is with the evidence as a whole, and other factors.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  An administrative law judge must provide "good reasons" for the weight he gives a treating source opinion.  Id.  He also must base his decision on substantial evidence and not mere speculation.  White v. Apfel, 167 F.3d 369, 375 (7th Cir. 1999).

20

The administrative law judge did not place great weight on the opinion of plaintiff's treating physician, Dr. Strapon, that plaintiff could sit for less than two hours in an eight-hour workday, walk or stand less than two hours in an eight-hour work day, walk no more than one block at a time, lift less than ten pounds occasionally and would need unscheduled breaks.  The reason that the administrative law judge gave for his decision was that Dr. Strapon's opinion was not consistent with his treatment notes, which lacked the severe findings to support the opinion.  Plaintiff argues that remand is required because the administrative law judge provided no detail as to how the treatment notes are inconsistent. However, an administrative law judge need not discuss in detail each piece of evidence. Johansen v. Barnhart, 324 F.3d 283, 287 (7th Cir. 2002).  In this case, the administrative law judge's reference to the treatment notes is sufficient to show why he did not place great weight on Strapon's opinion.

As the commissioner points out, plaintiff does not refer to any notations from Strapon's treatment notes to support her suggestion that they were consistent with Strapon's opinion.  Although Strapon's treatment notes are difficult to read, I have reviewed them and cannot find any indication in the notes that plaintiff had difficulty walking. In fact, on one occasion she reported to Strapon that she did a lot of walking.  AR 632.  Further, there are no treatment notes containing findings indicating that plaintiff could lift less than ten pounds occasionally or would need unscheduled breaks from work activity.  In addition, Dr.

21

Strapon did not identify any supporting clinical findings, laboratory tests or other test results on the form that he completed.  Dixon v. Massanari, 270 F.3d 1171, 1177 (7th Cir. 2001) (administrative law judge could reasonably reject treating physician's opinion that plaintiff was disabled where treating physician "expressed this opinion by writing 'yes' next to a question that Dixon's attorney had pre-typed [but] did not elaborate on the basis for his opinion").  These were good reasons for rejecting Dr. Strapon's opinion.

Plaintiff argues that even if the administrative law judge properly found that Strapon's opinion was not entitled to controlling weight, he was required to evaluate the opinion's weight in accordance with the commissioner's regulations.  The factors to be considered include how often the treating physician has examined the claimant, whether the physician is a specialist in the condition claimed to be disabling, how consistent the physician's opinion is with the evidence as a whole, and other factors.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Although the administrative law judge did not specifically address these factors, I can infer from his discussion of the evidence that he considered them.  Dr. Strapon was plaintiff's treating physician for two years but was not a specialist in any of the conditions that plaintiff had been diagnosed with.  Most important, Dr. Strapon's opinion was not consistent with the evidence as a whole.  Dr. Eric Carlson examined plaintiff at the request of the agency and found that she could perform light work.  Dr. Chan, a state agency consulting physician, found that plaintiff could lift 10 pounds frequently and 20 pounds

22

occasionally, stand or walk six hours in an eight-hour work day and sit six hours in an eight hour work day.  A second state agency consulting physician affirmed this assessment.  Dr. Healy recommended conservative treatment for plaintiff's knee problems  and performed carpal tunnel surgery that corrected the problem with plaintiff's wrists.  There is no evidence in the record to support that any of plaintiff's impairments singly or in combination would prevent her from doing light work.  It was reasonable for the administrative law judge to give Dr. Strapon's opinion no weight.

### D. Credibility

Plaintiff challenges the administrative law judge's determination that her statements concerning the intensity, persistence and limiting effects of her symptoms were  not entirely credible.  Under Social Security Ruling 96-7p, an administrative law judge must follow a two-step process in evaluating an individual's own description of his or her impairments:  1) determine whether an "underlying medically determinable physical or mental impairment" could reasonably be expected to produce the individual's pain or other symptoms; and 2) if such a determination is made, evaluate the "intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities."  Social Security Ruling 96-7p, 1996 WL 374186, *1 (1996); see also Scheck v. Barnhart, 357 F.3d 697, 702 (7th Cir. 2004).  When conducting

this evaluation, the administrative law judge may not reject the claimant's statements regarding her symptoms on the sole ground that the statements are not substantiated by objective medical evidence.  Instead, the administrative law judge must consider the entire case record to determine whether the individual's statements are credible.  Relevant factors the administrative law judge must evaluate are the individual's daily activities; the location, duration, frequency and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; other treatment or measures taken for relief of pain; the individual's prior work record and efforts to work; and any other factors concerning the individual's functional limitations and restrictions.  SSR 96-7p; 20 C.F.R. §§ 404.1529(c), 416.929(c).  See also Scheck, 357 F.3d at 703; Zurawski, 245 F.3d at 887.

An administrative law judge's credibility determination is given special deference because the administrative law judge is in the best position to see and hear the witness and to determine credibility.  Shramek v. Apfel, 226 F.3d 809, 812 (7th Cir. 2000).  In general, an administrative law judge's credibility determination will be upheld unless it is "patently wrong."  Prochaska v. Barnhart, 454 F.3d 731, 738 (7th Cir. 2006); Sims v. Barnhart, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying.").

24

However, the administrative law judge still must build an accurate and logical bridge between the evidence and the result.  Shramek, 226 F.3d at 811.  The court will affirm a credibility determination as long as the administrative law judge gives specific reasons that are supported by the record.  Skarbeck v. Barnhart, 390 F. 3d 500, 505 (7th Cir. 2004).

Plaintiff argues that, although the administrative law judge gave reasons for his determination that plaintiff was not credible, he did not give good reasons.  I disagree.  In determining that plaintiff's testimony concerning her disabling limitations was not fully credible, the administrative law judge gave specific examples of how the medical evidence directly contradicted plaintiff's testimony.  He noted that plaintiff's testimony that she could not walk more than one block, that her back pain had not improved after his surgery and that she still had pain in her back and legs, and he found this testimony inconsistent with her report of significant improvement in her back and leg pain after the surgery, Dr. Carlson's finding that she had some limitation of lumbar motion but full strength and good sensation in the lower extremities and her receipt of only conservative treatment for her knees.  The administrative law judge also explained that the medical evidence showed that her carpal tunnel syndrome had been corrected by surgery and that she no longer had significant deficits in the use of her hands, which was inconsistent with plaintiff's testimony that she had pain in her hands.  Although an administrative law judge may not ignore a claimant's subjective reports of pain simply because they are not fully supported by the

25

objective medical evidence, discrepancies between objective evidence and self-reports may suggest symptom magnification.  Sienkiewicz v. Barnhart, 409 F. 3d 798, 804 (7th Cir. 2005).  The administrative law judge also found that plaintiff's reported wide range of household chores was inconsistent with her testimony concerning her limitations.  These conclusions are all supported by the record and provide adequate support for the administrative law judge's credibility finding.

Other evidence in the record supports the administrative law judge's credibility finding.  Plaintiff reported to Dr. Strapon on May 2, 2004 that she did a lot of walking and told Dr. Desmonde in June 2004 that she walked for exercise.  In contrast, at the hearing plaintiff testified that she could not walk more than a block because she had arthritis in her hips.  There is no medical evidence in the record that plaintiff had arthritis in her hips.  In June 2004 Dr. Healy noted that his exam of plaintiff knees was unrevealing.  Plaintiff reported to Dr. Carlson in August 2004 that she was independent in dressing, bathing and toileting.  She also reported that she walked without an assistive device, washed dishes, swept the floor and went shopping.  Dr. Carlson also noted that plaintiff was able to climb onto the examination table independently.  These activities are inconsistent with plaintiff's testimony that she was unable to bathe and dress herself twice a week because of severe pain.

Plaintiff's argument that the administrative law judge's findings are internally inconsistent lacks merit.  Plaintiff argues that the administrative law judge's citation to an

26

April 2005 nerve conduction study confirming moderately severe bilateral carpal tunnel syndrome and mild peripheral neuropathy was inconsistent with his finding that plaintiff had no significant deficits in her hands.  This is not inconsistent because the April 2005 nerve conduction study was before plaintiff's surgeries for carpal tunnel release in May and June 2005, which largely corrected the problems plaintiff was having with her hands. Further, the administrative law judge incorporated any limitation caused by mild neuropathy into the limitation of no repetitive power gripping.

Plaintiff has not demonstrated that this is one of those rare occasions on which the court should disturb the administrative law judge's credibility finding.  The administrative law judge was not patently wrong.  He built an accurate and logical bridge between the evidence and his conclusion that plaintiff's statements considering her limitations were not fully credible.

E. Residual Functional Capacity

Plaintiff argues that the administrative law judge's residual functional capacity determination is not supported by evidence in the record.  Specifically, he objects to the administrative law judge's finding that plaintiff should avoid repetitive power gripping, repetitive kneeling and should bend or twist her trunk only occasionally, on the ground that none of these limitations was found by any medical source.  Plaintiff asserts that the residual

27

functional capacity assessment is a medical assessment.  I disagree.  The regulations explain that the residual functional capacity assessment is a legal matter reserved for the commissioner to determine from the record as a whole.  20 C.F.R. §§ 404.1546(c), 416.946(c).  Although a medical source opinion must be weighed, it does not amount to a residual functional capacity assessment.  Social Security Ruling 96-5p (". . . a medical source statement must not be equaled with the administrative finding known as the RFC assessment").  The limitations found by the administrative law judge are certainly supported by the record.  Plaintiff's complaints of knee pain and pain in her hands support the limitations of no repetitive power gripping or kneeling.  As the commissioner points out, it is difficult to understand how the exclusion of these limitations would have made plaintiff less able to perform work.


ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of Social Security, is AFFIRMED and plaintiff Jeanette Jacobs' appeal is DISMISSED.  The

clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 20th day of June, 2008.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge